ROBERT L. BLAND, Judge.
In this case claimant R. C. Jackson prosecutes his claim against the conservation commission of West Virginia, a governmental agency of the state, for the purpose of obtaining an award in the sum of $390.00. His claim to such award is resisted by respondent.
Claimant is engaged in the business of operating a sawmill and manufacturing timber or lumber products in Upshur county, West Virginia. He has been engaged in the sawmill business for thirty-five years. During that time he has manufactured and sold lumber to various concerns or businesses.
The state of West Virginia maintains, under the jurisdiction and supervision of the conservation commission, a project known as Raccoon Farm, on French Creek, in the county of Upshur. Since November 1945, one “Bill” Jarrell has been superintendent of the project, popularly and generally known as the “Game Farm.” Many animals of various species are to be found there. It is one of the attractions of the state.
*50 Under date of August 15, 1947, the department of purchases of West Virginia, of which the Honorable Garl Riggs is director, issued and sent to claimant R. C. Jackson a purchase order calling for 6000 board feet of rough poplar lumber, 1" x 6" x 12' or 14', at $65.00 per 1000 feet, amounting to $390.00, and also for 6000 board feet of 2" x 4// x 12' or 14' rough poplar hemlock, at $65.00 per 1000 feet, amounting to $390.00. All of this lumber was to be shipped to “Bill” Jarrell, superintendent of the said Raccoon Farm at French Creek.
Claimant proceeded promptly to deliver the lumber called for in the purchase order. He delivered one load of the 6000 feet specified in the purchase order to the game farm. Some person there requested that it be taken to a planing mill, a distance, from the farm, operated by a man by the name of Queen. This was done. Soon thereafter a second load was delivered on the farm premises. It seems, however, from the evidence, that Mr. Jarrell, the superintendent of the game farm, was of opinion that the lumber furnished was unfit for the purposes for which it was intended to be used, and raised the question as to the quality of the timber, which fact was communicated to claimant. The third load, being all of the order for the first 6000 feet of lumber to be furnished, was delivered at the planing mill, but not received by the representatives of respondent, and was therefore unloaded on a public road adjacent to the game farm, and left there. On the eighteenth of February, 1948, following August 15, 1947, the date of purchase order, at the request of Mr. Jarrell, superintendent of the game farm, the department of purchases attempted to cancel the entire order for lumber, including all of the lumber actually delivered, and the second mentioned 6000 feet of timber which had not been delivered. No payment was made to claimant for the first 6000 feet actually delivered and he made no attempt to deliver the remaining 6000 feet of timber after notification of the purported cancellation of the lumber contract. The claim is limited to the payment of the 6000 feet of lumber delivered at the farm for and on behalf of the conservation commission.
*51 The contention of respondent is that the lumber delivered and proposed to be delivered under the terms of the purchase order was not adapted to the purposes for which it was intended to be used and that it was worthless to the commission. Seemingly, a very considerable controversy arose between representatives of respondent and claimant. The purchase order merely specified rough lumber of certain dimensions and the claimant had no notice of the purposes for which the conservation commission intended to use the lumber. Claimant stated upon the hearing that he was of opinion that such lumber was proposed to be used in the building of raccoon and quail pens. This question, however, is immaterial in making a determination of the claim. The superintendent of the farm stated to claimant that he favored the cancellation of the order and an invitation to new bids for lumber of greater value than that mentioned in the contract of purchase made with claimant. The evidence shows very clearly that claimant was fair at all times and willing to supply new pieces of lumber to replace such as could be found that did not measure up to or correspond with the purchase order. It is needless to go into any detailed discussion of the evidence presented to the court upon the hearing of the claim. The claimant himself was very positive that the lumber furnished by him was actually of a superior quality to that specified in the purchase order. Representatives of respondent based their objection to the lumber supplied upon the ground that it should have been a different type of lumber, a type not specified in the purchase order, and for which a higher price would necessarily have to be paid. The evidence shows no such actual examination and familiarity with the quality of the lumber furnished as would justify or support the defense made to the payment of the claim filed. We are of opinion from the evidence that the claimant did all within reason to make a delivery of the lumber purchased from him. We are further of the opinion from this evidence that the representatives of the commission were entirely too exacting and demanded much more than the contract of purchase called for. We are moreover of opinion that the superintendent of the game farm and other representatives of the conservation commission were negligent and indifferent in taking care of *52 the lumber delivered by claimant. The last load was permitted to lie on the roadside or highway until it rotted, and seemingly no care whatever was exercised either to use or protect the lumber actually delivered on the game farm. The state bought and had the benefit of claimant’s lumber. In all fairness the state should pay for what it purchased and what was delivered. Contracts cannot be disposed of or destroyed by a mere wave of the hand. So far as any defense to the claim made in the court of claims by the conservation commission is concerned, it is, in our judgment, futile and wholly insufficient. All of the evidence, carefully considered, satisfies the three members of the court, in the investigation that has been conducted of the claim, that it is an honest claim, possessed of merit, and should be paid.
An award is, therefore, made in favor of claimant R. C. Jackson in the sum of three hundred and ninety dollars ($390.00).